**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KATHERINE KRAEMER,
*Plaintiff*,

v.

Case No. 3:26-cv-296 (OAW)

WESLEYAN UNIVERSITY,
*Defendant*.

## ORDER GRANTING MOTION TO DISMISS

This action is before the court upon Defendant's Motion to Dismiss ("Motion"). ECF No. 19. Upon the court's careful review of the Motion, Plaintiff's opposition brief, ECF No. 21, Defendant's reply brief, ECF No. 22, and the record in this matter, and also for the foregoing reasons, the Motion hereby is **GRANTED.**

## I. BACKGROUND[1]

### A. Diagnosis & Informal Requests

This case arises from Defendant's treatment of Plaintiff after she was diagnosed with Hashimoto's disease ("Hashimoto's"), ultimately culminating in her constructive discharge. ECF No. 1 ¶ 1. Plaintiff was diagnosed with Hashimoto's after she accepted her position with Defendant. *Id.* ¶ 9. Hashimoto's "causes chronic fatigue, chronic pain, and increase susceptibility to infection, can flare up at any time without warning, and substantially limits major life activities." *Id.* ¶ 10. The disease "makes travel and in-person work difficult and risky." *Id.* ¶ 11.

[1] All factual allegations are taken from the Complaint, ECF No. 1, and are presumed true for the purpose of this ruling.

Plaintiff informed Defendant that she had a disability on March 19, 2024. *Id.* ¶ 12. She reached out to Defendant's "Ombudsperson, Israela Adah Brill-Crass, to discuss a potential hybrid work arrangement, meaning partial remote work on March 28, 2024." *Id.* ¶ 13. Brill-Crass supported Plaintiff's hybrid work request and advised her how to make a formal request. *Id.* ¶ 14. Plaintiff was "eligible for hybrid work in the near future, given [Defendant's] hybrid work policy," but sought a hybrid work schedule sooner as an accommodation. *Id.* ¶ 15. "Ms. Brill-Crass acknowledged that the typical waiting period for employees in [Plaintiff's] position . . . should be waived due to her disability and that a hybrid work arrangement accommodation was reasonable." *Id.* ¶ 16.

On April 9, 2024, Plaintiff met with Associate Director of Benefits Denise White-Patterson. *Id.* ¶ 17. White-Patterson advised Plaintiff to apply for FMLA leave. *Id.* ¶ 18. Plaintiff was told to "submit the proper paperwork" to Associate Director of Employee Benefits Amy Walsh to formally request an ADA accommodation. *Id.* ¶ 19.

**B. <u>Formal Accommodation Request & Subsequent Treatment</u>**

On April 11, 2024, Plaintiff submitted her accommodation request, attaching a doctor's note confirming her Hashimoto's diagnosis and recommending a hybrid work schedule. *Id.* ¶ 20. Plaintiff attended a meeting with Walsh on May 8, 2024, during which Walsh "made inappropriate and disparaging comments" related to Plaintiff's disability, including suggesting that Plaintiff's doctor was "unqualified" and recommending Plaintiff see "a doctor of Wesleyan's choice." *Id.* ¶ 21. Plaintiff "believed" this to be a "challenge" of her disability, "based on prior comments." *Id.* Walsh "admitted that hybrid work was a 'hot button issue' for Renell Wynn, the Vice President of Communications," who was the person who signed off on all accommodation requests. *Id.* ¶ 22.

On May 14, 2024, Walsh advised Plaintiff that "she was on the cusp of being granted a hybrid work accommodation for three months, at which time the hybrid work accommodation would be reevaluated." *Id.* ¶ 23. On May 14, 2024, during a meeting, Wynn rolled her eyes, publicly reprimanded Plaintiff, and used "an unusually negative tone." *Id.* ¶ 24. Wynn had not behaved in this manner prior to Plaintiff's requested accommodation, and it "publicly humiliated" Plaintiff in front of her team. *Id.* ¶ 25.

On May 22, 2024, Walsh sent Plaintiff more paperwork to fill out for her requested accommodation. *Id.* ¶ 26. Plaintiff returned the paperwork the next day. *Id.* On May 31, Plaintiff "advised" that she would be about an hour late to work so that she could pick up a prescription. *Id.* ¶ 27. When Plaintiff arrived at work, Wynn "refused to look" at her in a team meeting, while "acknowledging all other team members." *Id.* ¶ 28. Wynn later "publicly chastised" Plaintiff in front of her team, causing public humiliation. *Id.* ¶ 29. Plaintiff met with her supervisor that same day, and Wynn interrupted the meeting to "advise" Plaintiff "that the workday starts at 8:30 am, without exception," despite the fact that "employees routinely arrived after 8:30 am." *Id.* ¶ 30. This treatment only started after Plaintiff requested a hybrid work schedule. *Id.* ¶ 31.

During this time, Plaintiff used her sick and vacation time when she had flare-ups. *Id.* ¶ 32. Plaintiff was advised on June 3, 2024, that "she was taking too much time off due to her disability." *Id.* ¶ 33. Plaintiff's position "offered unlimited sick time," and at this time, Plaintiff had not exceeded her vacation or family sick time allotment. *Id.* ¶ 34. Plaintiff pushed back but did not receive a "substantive response." *Id.* ¶ 35. Plaintiff then "began to realize the micromanagement and unfair criticism . . . was retaliatory and related to her disability" and accommodation request. *Id.* ¶ 36.

Plaintiff complained to her supervisor on June 4, 2024, that she was being treated unfairly and felt uncomfortable around Wynn. *Id.* ¶ 37.

On June 11, 2024, Plaintiff "lost all feeling in her left foot, which lasted approximately three hours due to her autoimmune disease." *Id.* ¶ 38. However, the next day, June 12, 2024, Plaintiff attended a mandatory work retreat "because she felt she would suffer further retaliation and more hostility if she did not." *Id.* ¶ 39.

"Throughout the spring and summary of 2024," Defendant "frequently" placed Plaintiff in unsafe conditions by requiring her to commute into the office and refusing to grant her hybrid work request. *Id.* ¶ 40. Driving was risky for Plaintiff because of her flare-ups, which "left her immobile and in pain." *Id.* ¶ 41. Plaintiff occasionally had to leave work early, "unsure if she could make it home safely." *Id.*

### C. Hybrid Work Request Grant

Plaintiff was granted a hybrid work request "through December of 2024." *Id.* ¶ 42. However, Wynn revoked her hybrid work request in late August 2024. *Id.* ¶ 43. Wynn advised Plaintiff and Plaintiff's team "that no employee on the team was allowed to work in a hybrid work arrangement until the Fall of 2025." *Id.* ¶ 44. Plaintiff filed a formal complaint against Wynn because of the revoked accommodation and "the other severe and pervasive harassment." *Id.* ¶ 45. On September 2024, Plaintiff met with HR, where she expressed her concerns about the retaliation and harassment that she experienced related to her disability and hybrid work accommodation request. *Id.* ¶ 46.

Plaintiff was retaliated against for "increasingly minute violations in an effort" to force Plaintiff to resign. *Id.* ¶ 47. Defendant knew that Plaintiff was taking day off because of her disability, "but continued to overwork her in order to give her negative reviews." *Id.*

¶ 48. The hostile work environment caused her to resign in December of 2024. *Id.* ¶ 50. Plaintiff contends that Defendant constructively discharged her on December 31, 2024, which was the "the last date she was paid following her resignation." *Id.* ¶ 51. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 21, 2025, alleging disability discrimination, failure to accommodation, retaliation, and a hostile work environment. *Id.* ¶ 60. The EEOC issued Plaintiff a Notice of Right to Sue on November 28, 2025. *Id.* ¶ 61.

## II. LEGAL STANDARD

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a 12(b)(6) motion to dismiss, the court must draw

all reasonable inferences in the non-movant's favor. *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007).

## III. <u>DISCUSSION</u>

Plaintiff has asserted that Defendant discriminated against her based on her disability, failed to accommodate her, retaliated against her, and created a hostile work environment, in violation of the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practice Act ("CFEPA"). ECF No. 1. Defendant argues that Plaintiff failed to exhaust her administrative remedies, and in the alternative, that she failed to state a claim. ECF No. 19. As the court finds Defendant's failure to exhaust arguments dispositive, it does not address Defendant's alternative argument.

### A. <u>Failure to Exhaust</u>

#### 1. <u>ADA</u>

Initially, the court addresses the issue of what day Plaintiff's constructive discharge claim started accruing. Plaintiff asserts that her claim started accruing on the last day she was paid, December 31, 2024. ECF No. 21 at 4. Defendant asserts that the legally relevant date was the date upon which Plaintiff gave her resignation notice. ECF No. 22 at 2. Defendant also attaches Plaintiff's right to sue letter, which included a dismissal by the EEOC because Plaintiff's charge was not timely filed. ECF No. 19-1 at 2. Plaintiff did not identify the date upon which Plaintiff turned in her resignation notice. *Id.* However, in her opposition, Plaintiff states that she her charge "listed December 18, 2024, as the last date of discriminatory act," but that the "charge itself states that she was constructively discharged in December 2024 without specifying a specific date." ECF No.

21 at 5 n. 2. Defendant also attached Plaintiff's resignation notice, which was submitted on December 10, 2024.[2] ECF No. 22-1 at 2.

A constructive discharge claim "accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation." *Green v. Brennan*, 578 U.S. 547, 564 (2016); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) ("We think that the date that Flaherty's claim accrued was the date when she gave definite notice of her intention to retire, and the rule should be the same in all cases of constructive discharge."). Therefore, Plaintiff's claim started accruing on the date she gave notice of her resignation. However, Plaintiff does not include her date of resignation in her complaint—rather, she just asserts that "[b]y December of 2024" Plaintiff was left with "no choice but to resign," and alleges that December 31, 2024, the last date she was paid following her resignation, was her constructive discharge date. ECF No. 1 ¶¶ 50–51.

In this case, the court may consider the notice of resignation attached to Defendant's reply. *See Russo v. Navient Sols., LLC*, No. 2:16-cv-00316, 2018 WL 1474354, at *4 (D. Vt. Mar. 23, 2018) (noting that a court, when analyzing a motion to dismiss, considers "the facts alleged in the complaint, any written instrument attached to [the complaint] as an exhibit, documents incorporated in [the complaint] by reference and any documents considered integral to the complaint) (citation modified) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). Plaintiff referenced resigning in

[2] The court can consider the EEOC right-to-sue notice and the letter of resignation without converting the motion into one for summary judgment. *See Catania v. NYU Langone Health Sys.*, No. 22-cv 4362, 2022 WL 17539121, at *1 (S.D.N.Y. Dec. 5, 2022) ("In employment cases, such properly considered documents include letters of resignation and termination letters."); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) ("However, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider EEOC filings because 'they are public documents' and are 'integral to Plaintiff's claims.'") (citations omitted).

her complaint, and her notice of resignation "was an integral part" of her constructive discharge claim. *Arcari v. 46th St. Dev. LLC*, No. 1:10-cv-3619, 2011 WL 832809, at *4 (S.D.N.Y. Mar. 2, 2011). Plaintiff's "lack of express reliance" on her notice of resignation "does not foreclose a court from considering [it], because the exception allowing such consideration prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.* (citation modified) (citing *Global Network Commuc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006)). Accordingly, the court may consider the notice of resignation attached to Defendant's reply, as it is integral to Plaintiff's complaint. *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (noting that in most situations where the material is integral, "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").

Plaintiff also admits that her EEOC charge "listed December 18, 2024, as the last date of discriminatory act." ECF No. 21 at 5 n. 2. Even relying on this later date, Plaintiff's EEOC charge was untimely.

Administrative exhaustion is non-jurisdictional for ADA claims. *Ortiz v. Univ. of Conn.*, No. 3:24-cv-00350 (JCH), 2024 WL 4871675, at *3 (D. Conn. Nov. 22, 2024). Plaintiffs are required to exhaust their administrative remedies before filing a lawsuit. *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004). This includes filing a *timely* complaint with the EEOC. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (noting that "a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC").

Here, Plaintiff alleges that she filed a charge with the EEOC on October 21, 2025, and that she received a right to sue notice on November 28, 2025. Compl. ¶¶ 60–61. The right to sue included a dismissal because the "charge was not filed within the time limits under the law." ECF No. 19 Ex. A. Plaintiff had 300 days to file her charge. However, Plaintiff filed the EEOC charge on October 21, 2025—307 days after the December 18 date (and 315 days from the December 10 resignation date). ECF No. 21 at 5 n. 2; ECF No. 22 at 4.

Accordingly, because Plaintiff failed to file her charge in a timely manner, she failed to exhaust her administrative remedies. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006) ("a right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed").

Plaintiff argues, in the alternative, that if the court finds that her EEOC charge was untimely, that it is subject to equitable tolling. ECF No. 21 at 6. In support of this argument, Plaintiff argues that she "has actively pursued judicial remedies." *Id.* Defendant counters that "the relevant inquiry is whether Plaintiff acted with reasonable diligence during the period she was required to timely file with the EEOC and/or the CHRO." ECF No. 22 at 5. Defendant asserts that Plaintiff alleged no facts showing she acted with reasonable diligence in filing her EEOC or CHRO charge, which "is fatal to her request for tolling." *Id.* at 5–6.

The Supreme Court of the United States has recognized that the 300-day time limit for filing an EEOC charge is subject to equitable tolling. *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 577 (E.D.N.Y. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Equitable tolling has been applied in three general circumstances:

"(1) when an employer's actively misleading conduct is responsible for the employee's ignorance of [her] cause of action; (2) when tolling of the time bar might be permitted as a matter of fairness; and (3) when extraordinary circumstances have prevented the employee from exercising [her] rights." *Id.* (citation modified). The court also must consider "whether the party seeking its application" has acted with reasonable diligence during the time she seeks to have tolled and has proved that the "circumstances are so extraordinary that the doctrine should apply." *Id.* (citing *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80–81 (2d Cir. 2003)). Equitable tolling does not extend to "what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990). Rather, equitable tolling "may be appropriate" where the plaintiff "has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct." *Id.* at 578; *see also Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) ("Equitable tolling applies only in the rare and exceptional circumstance").

Here, Plaintiff fails to demonstrate that her circumstances are so rare and exceptional as to make equitable tolling appropriate. Plaintiff's equitable tolling argument is barren in reasoning, beyond merely stating that she "has actively pursued judicial remedies." ECF No. 21 at 6. There is nothing in the record suggesting that the "circumstances were so extraordinary that equitable tolling should apply." *Semper*, 786 F. Supp. 2d at 578; *see also Zerilli–Edelglass,* 333 F.3d at 80–81 (finding district court did not abuse its discretion in declining to equitably "toll the 300-day EEOC filing deadline because it found that plaintiff had failed to act with reasonable diligence throughout the time period she seeks to have tolled"). To be clear, this standard is applied even when

cases are brought just one or two weeks out of time and are based upon mere "ordinary attorney neglect" of a plaintiff's "excusable neglect." *See Semper*, 786 F. Supp. 2d at 579 (finding that a six-day delay did not, in itself, warrant equitable tolling) (citations omitted). "No principle of law supports the proposition that the applicability of equitable tolling is measured by time alone." *Id*.

Accordingly, Plaintiff has failed to demonstrate that equitable tolling should apply, and Defendant's motion to dismiss is granted as to Plaintiff's ADA claims.

**2. <u>CFEPA Claims</u>**

Defendant argues that Plaintiff's CFEPA claims should be dismissed because she failed to allege facts showing she exhausted her administrative remedies by filing a complaint and obtaining a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CHRO"). ECF No. 19-2 at 5. Plaintiff alleges, for the first time, that her EEOC charge was marked "to be dual filed" with the CHRO. ECF No. 21 at 1. Viewing the allegations in the light most favorable to Plaintiff, "the court will presume, for the purposes of this motion only," that the CHRO filing "also constituted a contemporaneous filing with the EEOC on the same date." *Lomako v. N.Y. Inst. of Tech.*, No. 1:09-cv-6066, 2010 WL 1915041, at *4 n. 5 (S.D.N.Y. May 12, 2010), *aff'd*, 440 Fed. Appx 1 (2d Cir. 2011). Even presuming this, however, Plaintiff's CHRO filing would remain untimely.

"Employees who believe that an employer has violated the CFEPA must, by statute, first pursue administrative remedies with [CHRO] before bringing suit." *Grebla v. Danbury Hosp.*, No. 3:22-cv-13 (KAD), 2023 WL 4273700, at *3 (D. Conn. June 29, 2023). "A charge of discrimination to the CHRO must be made within 300 days of the alleged act

of discrimination." *Id.* (citing Conn. Gen. Stat. § 46a-82(f)). Further, no "action may be brought in accordance with section 46a-100 unless the complainant has received a release from the [CHRO] in accordance with the provisions of this section." Conn. Gen. Stat. § 46a-101(a). Failure to satisfy these exhaustion requirements "results in dismissal for lack of subject matter jurisdiction." *Grebla*, 2023 WL 4273700, at *3.

Here, Plaintiff concedes that she did not receive a release of jurisdiction from the CHRO. ECF No. 21 at 2. Plaintiff urges the court to allow her to "obtain a release" and "filed an Amended Complaint after the release is obtained to cure this deficiency." *Id.* Although this relief has been granted in this court before, *see Glenn v. Kelly Servs.*, No. 3:24-cv-894 (VAB), 2026 U.S. Dist. WL 867488, at *2 (D. Conn. Mar. 30, 2026); *Watson v. Senior Philanthropy of Westport, LLC*, No. 3:23-cv-31 (VAB), 2023 WL 5020812, at *2 (D. Conn. Aug. 5, 2023), this relief is futile here, as Plaintiff alleges in her opposition that she dual filed her CHRO and EEOC charge. Because Plaintiff's EEOC charge was untimely filed, her CHRO charge is untimely as well. *See supra* Section III.A.1.

Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's CFEPA claims.

## IV. CONCLUSION

For the above reasons, the court hereby **GRANTS** Defendant's motion to dismiss **(ECF No. 19),** and the Clerk of Court respectfully is directed to please close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 27th day of October, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE